UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
                                                        :
FRANCES C. PETERS,                                      :
                                                        :
                        Plaintiff,                      :
                                                        :        13 Civ. 3098 (PAC)
        -against-                                       :
                                                        :        OPINION AND ORDER
UBS AG,                                                 :
                                                        :
                        Defendant.                      :
                                                        :
--------------------------------------------------------x

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Frances C. Peters ("Plaintiff") sued UBS AG ("Defendant") and UBS Trustees

(Bahamas) Ltd. ("Trustee"), among others, in New York State Supreme Court, alleging that they

interfered with her access to distributions from a Bahamian trust (the "Mimosa Trust")

established in Greece and funded by Swiss bank accounts.  On July 11, 2011, the New York

State Supreme Court dismissed the complaint against the Defendant and Trustee for *forum non*

*conviens*, and the First Department affirmed the decision.  Plaintiff now seeks to relitigate the

same claims against the Defendant on the basis of allegedly "new" evidence uncovered during

discovery in the State proceeding.

For the following reasons, Defendant's motion to dismiss is GRANTED.

## BACKGROUND

### I.      Facts

Plaintiff is a beneficiary of the Mimosa Trust, which was established by her late aunt

Athena Eliades ("Eliades").  Compl. ¶¶ 6, 13-14.  Eliades was a Greek citizen who resided in

Greece and maintained accounts with UBS AG.  *Id.* ¶ 15.  Between November and December

2000, Eliades established the Mimosa Trust by signing documents at her home in Greece, in the presence of the Defendant's employee. *Id.* ¶ 17. These documents included a deed (the "Mimosa Trust Deed") and a letter describing how distributions should be made from the trust (the "Mimosa Letter of Wishes"). Defendant subsequently selected UBS Trustees (Bahamas) Ltd. as Trustee for the Mimosa Trust. *Id.* ¶ 18. In the summer of 2002, Plaintiff was shown documents that indicated that she had an interest in accounts with balances of over $25.3 million, $16.6 million, and $752 million, among others. *Id.* ¶ 23.

Eliades died on January 13, 2003. *Id.* ¶ 20. At her death, the money in the Mimosa Trust was approximately $22,568,564. *Id.* ¶ 26. Plaintiff was told that Defendant distributed the funds of the Mimosa Trust pursuant to the Mimosa Trust Letter of Wishes, but she received only $117,000. *Id.* ¶ 28.

## II.     Procedural History of New York State Proceedings

In 2004, Plaintiff filed a complaint in New York State Supreme Court against her mother and brother alleging that they had misappropriated millions of dollars from off-shore trusts established by Eliades (the "State action"). *See* Declaration of Mark G. Hanchet ("Hanchet Decl."), Ex. C at 2. As part of discovery, Plaintiff was shown documents by Defendant that counsel represented were true copies of the Mimosa Trust Deed and Letter of Wishes. Compl. ¶ 31; *see* Declaration of Leslie Trager ("Trager Decl."), Exs. A & D. The Mimosa Letter of Wishes was dated November 18, 2000 and described the beneficiaries as those sharing in two bank accounts at UBS AG. Compl. ¶ 35; *see* Trager Decl., Ex. A. The two bank account numbers were handwritten on the document. Compl. ¶ 36; *see* Trager Decl., Ex. A.

On September 14, 2009, Plaintiff filed a first amended complaint, which added Defendant and Trustee as defendants. Plaintiff alleged that the two entities breached their

fiduciary duties by intentionally and wrongfully distributing millions of dollars to Plaintiff's mother and brother in contravention of Eliades's express wishes. *See* Hanchet Decl., Ex. B ¶ 3. Additionally, Plaintiff claimed that the defendants conspired to cover up their misappropriation by providing Plaintiff with incomplete and inconsistent copies of the Mimosa Trust Deed and Letter of Wishes. *See id.*, Ex. B ¶ 7.  On July 11, 2011, New York State Supreme Court Justice Kapnick dismissed the first amended complaint against Defendant on the grounds of *forum non conviens*, held that Switzerland was the appropriate forum, and that the dismissal was without prejudice to recommencement in the appropriate jurisdictions. *See id.*, Ex. C, at 26-30.  Justice Kapnick based this holding on the "fortuitous connection to New York," the location of witnesses and documentary evidence in Switzerland, the need to apply Swiss law, and the availability of Switzerland as a forum for the dispute. *See id.*, Ex. C, at 26-30.  On December 4, 2012, the First Department affirmed the decision in all respects. *See id.*, Ex. D.

In October 2012, Plaintiff received documents from Defendant's counsel that showed that the two accounts handwritten on the Mimosa Letter of Wishes did not exist on the date the document was signed.  Compl. ¶ 37.  Additionally, Plaintiff learned that the amount of the trust funds held in one of the accounts was at least $44,138,797, or approximately double the amount said to have existed by Defendant. *Id.*

III.    **Procedural History of Bahamian Proceedings**

On November 6, 2009, UBS Trustees (Bahamas) Ltd. brought an action in the Supreme Court of the Bahamas, Equity Side seeking declaratory judgment regarding the authenticity of the Mimosa Trust Deed and Letter of Wishes. *See* Hanchet Decl., Ex. E.  The Trustee named Plaintiff and the other purported trust beneficiaries in its action. *See id.*, Ex. E.  On January 29, 2010, the court held that the two documents were authentic and that the documents could be

disclosed during the ongoing proceedings in New York (the "Bahamian judgment"). *See id.*, Ex. E, ¶¶ 1-2. While named, Plaintiff did not appear in the Bahamian action.

## DISCUSSION

I.   **Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) requires Plaintiff to "provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must allege "'enough facts to state a claim to relief that is plausible on its face.'" *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true all well-pleaded factual allegations and draws all inferences in Plaintiff's favor. *See Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006). In evaluating a motion to dismiss, the Court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which [she] relied in bringing the suit." *ATSI*, 493 F.3d at 98.

II.   **Analysis**

Defendant argues that the Complaint should be dismissed because (1) Plaintiff is collaterally estopped from revisiting the State court's *forum non conveniens* decision, (2) Plaintiff's claims are time barred, and (3) the Bahamian determination of the two documents' authenticity bars this action. *See* Memorandum of Law in Support of UBS AG's Motion to

Dismiss ("Def.'s Mot.") at 1-2.  The Court holds that Plaintiff's claims are barred by collateral

estoppels and are untimely, and need not decide whether the Bahamian judgment should be

recognized.

### A.   Collateral Estoppel Bars Relitigation of *Forum Non Conveniens*

Plaintiff is bound by the New York State Supreme Court's dismissal of her prior action

for *forum non conveniens* under principles of collateral estoppel.  "[A] party is collaterally

stopped from relitigating an issue if a four-part test is met:  (1) the identical issue was raised in a

previous proceeding; (2) the issue was actually litigated and decided in a previous proceeding;

(3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue

was necessary to support a valid and final judgment on the merits."  *Indus. Risk Insurers v. Port*

*Auth. of N.Y. and N.J.*, 493 F.3d 283, 287 (2d Cir. 2007) (quoting *Boguslavsky v. Kaplan*, 159

F.3d 715, 720 (2d Cir. 1998) (emphasis omitted)).[1]  There is no doubt that the issue of *forum non*

*conveniens* was actually litigated and decided in the State action.  Indeed, this was the only

ground on which Defendant moved to dismiss, and it formed the sole basis for the decision.  As a

result, this case depends on whether the issue of *forum non conveniens* is "identical" to that in

the prior proceeding and whether Plaintiff previously had a "full and fair opportunity to litigate"

that issue.

---

[1] Although there is "some doubt" as to whether federal or state law governs the collateral effect of a court's decision
on a subsequent diversity action, *see Indus. Risk Insurers*, 493 F.3d at 288, any differences are not dispositive in this
case.  New York law "prevents a party from relitigating an issue . . . (1) identical to an issue already decided (2) in a
previous proceeding in which that party had a full and fair opportunity to litigate, and where (3) the issue that was
raised previously [is] decisive of the present action."  *Id.* at 287-88 (quoting *Curry v. City of Syracuse*, 316 F.3d 324,
331 (2d Cir. 2003) (emphasis omitted)).  The last requirement—that the issue is decisive in the present action—
makes New York collateral estoppel law "slightly different" from federal law.  *Curry*, 316 F.3d at 331 n.4.  But
there is no doubt that this Court will dismiss the case if *forum non conveniens* applies.  In fact, Plaintiff does not
contest this requirement.

1.      **The Issues Are Identical**

The issues presented in the New York State action are identical to the issues before this

Court.  "Use of collateral estoppel 'must be confined to situations where the matter raised in the

second suit is identical in all respects with that decided in the first proceeding and where the

controlling facts and applicable legal rules remain unchanged.'"  *Faulkner v. Nat'l Geographic*

*Enters. Inc.*, 409 F.3d 26, 37 (2d Cir. 2005) (quoting *Commissioner v. Sunnen*, 333 U.S. 591,

599-600 (1948)).  Here, a *forum non conveniens* analysis would involve application of the same

legal standard as applied in the state action.  Courts consider "the New York law of *forum non*

*conveniens* [to be] virtually identical to the federal law."  *See First Union Nat'l Bank v. Paribas*,

135 F. Supp. 2d 443, 448 n.13 (S.D.N.Y. 2001); *see also Olympic Corp. v. Societe Generale*, 462

F.2d 376, 378 (2d Cir. 1972) ("In light of the similarity of the federal and state *forum non*

*conveniens* doctrines, it is unnecessary to decide which one controls in this diversity action . . .

.").

Furthermore, the same "essential" facts are presented in this case as in the State action.

*See Env't Defense v. E.P.A.*, 369 F.3d 193, 202 (2d Cir. 2004).  In the State action, Plaintiff sued

Defendant for conversion, unjust enrichment, common law fraud, fiduciary duty, and accounting

"aris[ing] out of Defendants' wrongful conduct in connection with the fraudulent

misappropriation of millions of dollars in assets held by or through the UBS Defendants in

foreign trusts, entities and accounts established for Plaintiff's benefit by Plaintiff's late aunt."

*See* Hanchet Decl., Ex. B ¶ 1.  She further alleged that Defendant conspired with her mother and

brother "in a fraudulent scheme to cover up [their] misappropriation" by providing her with

"materially false and misleading information and documentation" regarding the Mimosa Trust.

*Id.*, Ex. B ¶¶ 5-6.  Plaintiff now sues Defendant for breach of contract, accounting, and breach of

fiduciary duty and her complaint relies on virtually identical allegations. *See, e.g.*, Compl. ¶ 10 ("[T]he purported Mimosa Letter of Wishes . . . is an intentionally false document delivered by UBS AG to plaintiff to conceal its wrongful distribution and theft of assets from a trust and/or trusts which should have gone to plaintiff."); *id.* ¶ 46 ("UBS AG has also hidden from plaintiff the following assets which were within its possession and/or control and which should have been included in the trust and/or trusts for plaintiff's benefit . . . .").[2]

Plaintiff contends that the question is not whether the "underlying claims [are] similar and arising out of the same facts . . ., but whether there are 'objective facts relevant to the issue [of *forum non conveniens*] that materially alter the considerations underlying the previous resolution.'" *See* Pl.'s Opp'n at 12-16 (quoting *Ibar Ltd. v. Am. Bureau of Shipping*, No. 97 Civ. 8592, 1998 WL 274469, at *3 (S.D.N.Y. May 26, 1998)). Since Plaintiff can now demonstrate that the Mimosa Letter of Wishes was false through banking records, the argument goes that there is no basis for a *forum non conveniens* dismissal because Plaintiff does not need Swiss witnesses or Swiss documents to prove her case. *See* Pl.'s Opp'n at 15-16. But these documents do not alleviate the hardships on Defendant if it is forced to litigate in New York—the focus of the *forum non conveniens* analysis. *See* Hanchet Decl., Ex. C at 28-29 (discussing the hardships on Defendant). Furthermore, courts generally permit relitigation of a *forum non conveniens* decision only when the plaintiff has shown that the new forum is more convenient than the previous forum. *See, e.g.*, *Ibar Ltd.*, 1998 WL 274469, at *3-4; *Kelly v. Interpublic Gr. of Companies*, No. 07 Civ. 1317, 2007 WL 2265570, at *2 (S.D.N.Y. Aug. 2, 2007). As a result, the Court holds that any so-called "new" evidence does not alter the similarity of issues involved in the State action and in the current case.

---

[2] In fact, in arguing that the statute of limitations should be tolled, Plaintiff concedes that this case "arises out of the same occurrences as the first" case. *See* Pl.'s Opp'n at 23-25.

### 2.     Plaintiff Had a Full and Fair Opportunity to Litigate

Plaintiff also had a full and fair opportunity to litigate the issue of *forum non conveniens* in the State action.  In making this determination, "courts must consider 'the realities of the [prior] litigation, including the context and other circumstances which . . . may have had the practical effect of discouraging or deterring a party from fully litigating the determination which is now asserted against [that party.]'"  *Lewis v. Health and Hosps. Corp.*, No. 11 Civ. 0099, 2013 WL 2351798, at *4 (S.D.N.Y. May 31, 2013) (quoting *Ryan v. N.Y. Tel. Co.*, 62 N.Y.2d 494, 501 (1984)).  Here, Plaintiff has been litigating her claims since 2004, and subsequently added Defendant and Trustee to the State action in 2009.  Yet Plaintiff failed to serve any discovery requests on Defendant during this time.  *See* Reply Memorandum of Law in Further Support of UBS AG's Motion to Dismiss ("Reply Br.") at 5.  Instead, Plaintiff waited almost a year after Defendant was dismissed to serve Defendant with a third-party subpoena.  *Id.*  Plaintiff cannot claim that she was not afforded an opportunity to litigate the issue of *forum non conveniens* on the basis of documents that she could have requested while Defendant was a party to the State action.  Accordingly, the requirement that the *forum non conveniens* issue be fully and fairly litigated is satisfied here.

### 3.     The Unclean Hands Doctrine Does Not Apply

Plaintiff cannot escape application of collateral estoppel on the basis of the unclean hands doctrine.  *See* Opp'n Mot. at 5-6.  That doctrine may apply when that defendant "has committed some unconscionable act that is 'directly related to the subject matter in litigation.'"  *PenneCom B.V. v. Merrill Lynch & Co.*, 372 F.3d 488, 493 (2d Cir. 2004) (quoting *Weiss v. Mayflower Doughnut Corp.*, 1 N.Y.2d 310, 316 (1956)).  In other words, Defendant's misconduct must be directly related to the *forum non conveniens* analysis.  *See Keystone Driller Co. v. Gen.*

*Excavator Co.*, 290 U.S. 240, 245 (1933) (holding that an unconscionable act must have "immediate and necessary relation to the equity that he seeks"). That is not the case here: Plaintiff asserts that Defendant has unclean hands because it gave her a falsified version of the Mimosa Letter of Wishes. In fact, Justice Kapnick did not even mention the trust documents in her analysis. *See* Hanchet, Ex. C at 26-30. Plaintiff cannot bar application of collateral estoppel by arguing that Defendant provided false documents that have no relevance on the collateral estoppels analysis.

### B.   Plaintiff's Claims Are Barred by the Statute of Limitations

For an action based on fraud, a plaintiff must commence the action within "six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it." N.Y. C.P.L.R. § 213(8). Here, Plaintiff commenced this action on May 8, 2013—almost ten years since the Mimosa Trust was distributed. Plaintiff's claims are also not saved by the two-year discovery rule. To obtain the benefit of that rule, Plaintiff must not have discovered, or not been able to discover, Defendant's fraud until after May 8, 2011. Plaintiff sued Defendant in September 2009 for engaging in a fraudulent scheme to cover up the trust misappropriation, well before May 2011. *See* Hanchet Decl., Ex. B ¶ 7 ("The UBS Defendants have provided Plaintiff with limited documentation for . . . the Mimosa Trust . . . , which is incomplete and is inconsistent with, and materially different from, trust documentation and other materials obtained by Plaintiff during discovery"). Plaintiff's claims are therefore time-barred.

Nor is Plaintiff entitled to the benefit of the six-month grace period for re-filed cases. *See* Opp'n Mot. at 23-25. Under N.Y. C.P.L.R. § 205(a), an action terminated by any manner other than by a determination on the merits a plaintiff "may commence a new action upon the same

transaction or occurrence . . . within six months after the termination." This grace period was intended to allow a party who committed a technical mistake in a prior action to commence a new action "if the substantively identical claim is asserted against the same defendant." D. Siegel, Practice Commentaries, McKinney's Cons. Laws of N.Y., C.P.L.R. § 205.  Here, Plaintiff argues that the current action and the State action relate to the same occurrence, but that the facts are different.  Plaintiff cannot have it both ways:  the cases are either different and the grace period does not apply or the cases are the same and collateral estoppel applies.  Either way, Plaintiff's claims do not belong before this Court.

### CONCLUSION

Insofar as the Court determined that Plaintiff is collaterally estopped from revisiting the New York State Supreme Court's decisions on *forum non conveniens*, *see* Hanchet Decl., Ex. B, and that Plaintiff's case is time-barred, the Court need not decide whether the Bahamian judgment should be recognized.  Accordingly, the Court GRANTS Defendant's motion to dismiss.  The Clerk of Court is directed to enter judgment and to terminate this case.

Dated:  New York, New York
        January 15, 2014

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge